Electronically Filed by Superior Court of California, County of Orange, 05/29/2020 05:05:34 PM.
30-2020-01146794-CU-OE-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Brenda Sanchez, Deputy Clerk.

David P. Myers (SBN 206137)
Ann Hendrix (SBN 258285)
Morgan J. Good (SBN 311344)
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Ste. 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Donna May

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| DONNA MAY, an individual, | 30-2020-01146794-CU-OE-CJC<br>Assigned for all purposes:<br>Judge Richard Lee |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1. **DISABILITY DISCRIMINATION** |
| | 2. **FAILURE TO ACCOMMODATE DISABILITY** |
| WALT DISNEY PARKS AND RESORTS U.S., INC., a Florida Corporation, DISNEY WORLDWIDE SERVICES, INC., a Florida Corporation, KEYSTONE PAYING AGENT, Inc., a Florida Corporation, JEFF DUGGAN, an individual, and DOES 1 THROUGH 10, inclusive | 3. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS** |
| | 4. **VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT** |
| | 5. **DISABILITY HARASSMENT, HOSTILE WORK ENVIRONMENT** |
| | 6. **RETALIATION (REQUESTING ACCOMMODATION)** |
| Defendants. | 7. **RETALIATION** |
| | 8. **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION** |
| | **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

This is an action brought by Plaintiff Donna May ("Plaintiff") against Walt Disney Parks and Resorts U.S., Inc., Disney Worldwide Services, Inc., Keystone Paying Agent, Inc., Jeff Duggan, and other as of yet unnamed Defendants (hereinafter collectively "Defendants") alleging, among other things, violations of the California Fair Employment and Housing Act.  Plaintiff seeks damages, attorneys' fees and costs of suit.

## GENERAL ALLEGATIONS

1.   This Court is the proper court and this action is properly filed in the County of Orange and in this judicial district because Defendants do business in the County of Orange and because Defendants' obligations and liability arise therein.

2.   Plaintiff is a current employee of Defendants and a resident of the County of Los Angeles, State of California.

3.   Plaintiff is informed and believes, and thereon alleges that Defendant Walt Disney Parks and Resorts U.S., Inc. ("Disney Parks") is a Florida Corporation, registered to do business in California, and doing business in the County of Orange, State of California.

4.   Plaintiff is informed and believes, and thereon alleges that Defendant Disney Worldwide Services, Inc. ("Disney Worldwide") is a Florida Corporation, registered to do business in California, and doing business in the County of Orange, State of California.

5.   Plaintiff is informed and believes, and thereon alleges that Defendant Keystone Paying Agent, Inc. ("Keystone") is a Florida Corporation, doing business in the County of Orange, State of California.

6.   Plaintiff is informed and believes, and thereon alleges that Defendant Jeff Duggan ("Duggan") is an individual and a resident of the County of Los Angeles, State of California.

7.   The true names and capacities, whether individual, corporate, associate,

1 | or otherwise, of DOES 1 through 10 are unknown to Plaintiff, who therefore sues
2 | the DOE Defendants by fictitious names.  Plaintiff will amend this Complaint to
3 | show their true names and capacities when they have been ascertained.

4 |      8.   On information and belief, each and all of the acts and omissions alleged
5 | herein were performed by, or are attributable to, all Defendants, each acting as
6 | agents or employees, or under the direction and control of each of the other
7 | Defendants, and that said acts and failures to act were within the course and scope
8 | of said agency, employment or direction and control or any combination thereof.  On
9 | information and belief, Defendants were and are the agents of each other.

10 |      9.   Plaintiff further alleges that Defendants complained of herein operated
11 | as a joint employer or integrated enterprise, or any combination thereof, with
12 | another defendant or other defendants, each such defendant is jointly and severally
13 | liable as an employer. In the event that any defendant was acting as the *alter ego* of
14 | another defendant or other defendants such that there is or was such a unity and
15 | identity of interest between or among each and all said defendants that adherence
16 | to the legal fiction of separate existence would, under the particular circumstances
17 | that exist or existed, would sanction fraud or promote injustice, it would be an
18 | inequitable result to fail to disregard any such separateness of legal personality.

19 |      10. On information and belief, Defendants DOES 1 through 10 are the
20 | partners, owners, shareholders, or managers of Defendants, and were acting on
21 | behalf of Defendants in the payment of wages to Plaintiff.

22 |    **FACTS COMMON TO MORE THAN ONE CAUSE OF ACTION**

23 |      11. Defendants have employed Plaintiff since approximately 1989 in food and
24 | beverage locations at Defendants' Disneyland Resort.  Plaintiff is currently
25 | employed with Defendants as an Assistant Receiver.  Prior to approximately July
26 | 14, 2019, Plaintiff was working for Defendants as a Lead Receiver at a higher pay
27 | rate.

28 |      12. Throughout Plaintiff's employment, Plaintiff informed Defendants of her

various disabilities, including but not limited to her shellfish allergy, and related work restrictions. Plaintiff has kept Defendants informed of her disabilities by providing doctors notes and is also informed and believes that her doctor's office has faxed notes regarding Plaintiff's disabilities and related work restrictions to Defendants.

13. Starting in or about 2010, Plaintiff filled out Defendants' Certification of Health Care Provider (Family and Medical Leave Act/California Family Rights Act) form for intermittent medical leave. Plaintiff filled out the paperwork for intermittent medical leave because whenever Plaintiff called out sick from work due to her disabilities without providing a doctor's note, she would receive negative points that would lead to disciplinary action. Once Plaintiff qualified for intermittent medical leave, Plaintiff was able to call out sick from work due to her disabilities without receiving negative disciplinary points. During Plaintiff's employment, Plaintiff annually filled out intermittent leave paperwork due to her disabilities so that she would not be disciplined for days she called out sick due to her disabilities. Plaintiff last provided Defendants with a completed Certification of Health Care Provider form on or about June 17, 2019.

14. On or about January 28, 2010, Plaintiff's doctor issued work restrictions to Defendants stating that Plaintiff needed to avoid areas where fish is being cooked due to Plaintiff's shellfish allergy disability. Plaintiff notified Defendants of her work restrictions and shellfish allergy disability and provided Defendants with related doctor's notes. Plaintiff is informed and believes that her doctor's office also faxed medical notes to Defendants regarding Plaintiff's shellfish allergy disability and related work restrictions.

15. Starting in or about September 2014 until approximately June 2017, Defendants scheduled Plaintiff to work five (5) Lead Receiver Shifts at Defendants' Hungry Bear restaurant to accommodate Plaintiff's shellfish allergy disability because shellfish items were not on the menu at Hungry Bear.

16. Starting in or about June 2017, Plaintiff was no longer able to work five Lead Receiver Shifts at Defendants' Hungry Bear restaurant because Hungry Bear started serving a seafood menu item on an intermittent basis for Defendants' theater production "Fantasmic!" Because Plaintiff could not work at Hungry Bear on days seafood was being served for the "Fantasmic!" theater production, Defendants' Area Manager Jeff Casulas scheduled Plaintiff to work in Defendants' other restaurants on those days.  Casulas also scheduled Plaintiff to work a double-shift at Hungry Bear one day per week when "Fantasmic!" was not in operation.

17. In or about July 2017, Defendants started scheduling Plaintiff to work both host shifts and lead shifts because of her shellfish allergy and changes to her schedule; during host shifts Plaintiff earned a lower hourly rate.

18. On or about July 29, 2017, Plaintiff emailed Defendants' Receiving Manager, Joe Velasco informing him that Defendants' Cook, Marilu Luna – who was in a lower job classification than Plaintiff – had been scheduled to receive training to become a Lead Shift Receiver at Defendants' Market House Restaurant. In this same email, Plaintiff requested to be trained to work lead shifts at Market House so that Plaintiff could have five lead shifts a week working at just one of Defendants' Restaurants. Defendants' Market House Restaurant is a restaurant serving coffee items, breakfast, and pastries; Plaintiff is informed and believes that Market House does not have seafood items on its menu.

19. Shortly after Plaintiff's email on or about July 29, 2017, Plaintiff submitted a Cross Training Interest Form on Defendants' online employee portal requesting that Plaintiff be trained to work lead shifts at Market House.

20. In or about August 2017, Defendants' Food and Beverage Stage Manager Beverly Chan called Plaintiff and informed her that Defendants would not provide Plaintiff with training to work lead shifts at Market House. After this call, Plaintiff continued working lead and host shifts at Hungry Bear and Defendants' other restaurants around the "Fantasmic!" theater production schedule.

21. In or about early 2018, Plaintiff again submitted a Cross Training Interest Form on Defendants' online employee portal requesting training for Plaintiff to work lead shifts at Market House. Defendant never responded to Plaintiff's request.

22. In or about May 2018, Defendants' Production Manager, and Plaintiff's direct supervisor at Hungry Bear, Jeff Duggan, told Plaintiff that her shellfish allergy disability could no longer be accommodated at Hungry Bear because food products that had been stored in other locations before being delivered to Hungry Bear could be "cross-contaminated" with shrimp. Following this conversation, Defendants no longer scheduled Plaintiff's shifts at Hungry Bear and scheduled Plaintiff to work less lead shifts and more host shifts, at a lower pay rate, at Defendants' other restaurants. After Plaintiff stopped being scheduled to work shifts at Hungry Bear, Plaintiff notified Receiving Manager Joe Velasco that her shellfish allergy disability was no longer being accommodated.

23. On or about July 8, 2018, Plaintiff emailed Defendants' Area Manager Pam Nieblas asking whether Defendants' had a response to Plaintiff's prior Cross Training Interest Form Plaintiff submitted in early 2018 requesting to be trained to work lead shifts at Market House. In this email Plaintiff noted that she was aware of three other employees with lower job classifications than Plaintiff being trained as Lead Shift Receivers at Defendants' Market House restaurant.

24. On or about July 27, 2018, after not receiving a response from Defendants' Area Manager Nieblas, Plaintiff emailed Nieblas again following up on her prior email requesting to be trained to work lead shifts at Market House. Nieblas did not respond to Plaintiff's emails.

25. On or about August 9, 2018, Defendants' Area Manager Thomas Truong asked Plaintiff to provide Defendants with an updated doctor's note so Defendants could determine whether Plaintiff could work in the presence of fish with her disability. That same day, Plaintiff provided a doctor's note to Defendants stating

that Plaintiff may work with any fish except shellfish. Plaintiff is informed and believes that her doctor's office also faxed this doctor's note to Defendants that same day.

26. On or about August 16, 2018, Defendants' Case Advocate of Accommodations Linda Pelly emailed Plaintiff stating that her shellfish allergy disability, and related work restrictions, could be accommodated in Plaintiff's work area, per Manager Steve Coughlin.

27. In or about Summer 2018, Plaintiff complained to Defendants' Receiving Manager Joe Velasco that Defendants' Production Manager Jeff Duggan was not scheduling Plaintiff to work at Hungry Bear, that Duggan does not want Plaintiff working at Hungry Bear, and that Plaintiff believes Duggan will stop at nothing to get rid of Plaintiff. Plaintiff also complained to Velasco that she was being scheduled to work numerous host shifts, at a lower rate of pay, rather than working only in lead shifts.

28. Starting on or about September 3, 2018, after Plaintiff's complaints to Velasco, Defendants scheduled Plaintiff to work back at Hungry Bear on a regular basis.

29. On or about September 18, 2018, Plaintiff complained to Defendants' Labor Relations Area Manager Valarie Howard that Defendants' Production Manager Jeff Duggan had refused to accommodate Plaintiff's shellfish allergy disability, that Plaintiff believed Duggan intended to terminate her, and that Duggan had issued a write up to Plaintiff that Plaintiff believed was unwarranted, untrue, and retaliatory.

30. On or about October 1, 2018, Duggan called Plaintiff and told her that she could no longer work at Hungry Bear, and Plaintiff needed to call Defendants' Scheduling Department for further information. That same day, Plaintiff contacted Defendants' Scheduling Department, who informed Plaintiff that the Scheduling Department was unaware of Duggan's scheduling change for Plaintiff.

31. From approximately October 2, 2018 to October 12, 2018, Defendants scheduled Plaintiff to work, and Plaintiff worked, lead shifts at Defendant's Village House restaurant.

32. In or about October 2018, Defendants' Labor Relations Area Manager Valarie Howard and Defendants' Area Manager Thomas Truong authorized Plaintiff to change any of her scheduled host shifts to lead shifts using Defendants' workforce management software, WorkBrain, so that Plaintiff would no longer be paid a lower hourly rate during host shifts.

33. On or about November 14, 2018, Plaintiff submitted a Cross Training Interest Form on Defendants' online employee portal requesting training for Plaintiff to work lead shifts at Defendants' Market House restaurant.  That same day, Defendants emailed Plaintiff a denial of her request and instructed Plaintiff to speak with her Area Leaders to apply for Lead Training.

34. On or about November 15, 2018, Plaintiff emailed Defendants' Labor Relations Area Manager Valerie Howard and Defendants' Manager Steve Coughlin informing them that Defendants' had denied Plaintiff's request to receive lead shift training at Defendants' Market House restaurant and Defendants denied her request to work at Defendants' Pizza Port restaurant because of Plaintiff's disabilities.   Plaintiff also informed Howard that she was not being scheduled for lead receiver shifts at the higher pay rate, and thus had to change her pay rate using WorkBrain on most shifts.

35. In or about February 2019, Defendants' Production Manager Jeff Duggan became Plaintiff's supervisor at Defendants' Fan Toon restaurants where Plaintiff was working.  Shortly after becoming Plaintiff's supervisor, Duggan told Plaintiff that she would no longer be scheduled to work full time in Defendants' Fan Toon restaurants because the restaurants did not have enough workload.  Plaintiff is informed and believes that Duggan was attempting to get Plaintiff moved out of his management area.

36. On or about March 27, 2019, Defendants' Production Manager Jeff Duggan demanded Plaintiff tell him what manager had authorized her to receive her lead shift pay rate during host shifts. Plaintiff responded to Duggan showing him emails from Defendants' Labor Relations Area Manager Valarie Howard and Area Manager Thomas Troung authorizing Plaintiff to adjust her pay rate using WorkBrain whenever she worked host shifts. After discussing this with Plaintiff, Duggan told Plaintiff she was no longer allowed to use Defendants' workforce management software Workbrain on any shifts, including Plaintiff's lead shifts that required her to use Workbrain as part of her duties as a Lead Receiver. Duggan also told Plaintiff the she would no longer be paid the lead shift rate when working host shifts.

37. On or about May 5, 2019, Plaintiff called Defendants' Lead Receiver Mark Fukushima asking if there was any shellfish being stored in Defendants' Pizza Port restaurant's freezer because Plaintiff had upcoming shifts scheduled at Pizza Port. Fukashima confirmed that shrimp was being stored in the Pizza Port freezer and chefs at Pizza Port were working on a shrimp salad and pasta menu item. Fukashima followed the phone call with an email and an attached picture of a box labeled "shrimp" in the Pizza Port freezer. That same day, Plaintiff emailed Defendants' management asking to be removed from her upcoming shifts at Pizza Port, and to move to a different location due to shellfish being stored at Pizza Port and Plaintiff's shellfish allergy disability. Plaintiff is informed and believes that Defendants intentionally store an unused box labeled "shrimp" in the freezer at Pizza Port to prevent Plaintiff from being able to work shifts at Pizza Port.

38. In or about May 2019, Defendants' Production Manager Duggan instructed Plaintiff to provide him with an updated doctor's note stating whether Plaintiff could be exposed to cooked shrimp or uncooked shrimp.

39. On or about May 11, 2019, Plaintiff provided a doctor's note clarifying that Plaintiff cannot be exposed to the cooking of shellfish, she may safely work

near a freezer where shellfish is kept, but she should not open or reclose frozen containers containing shellfish. Plaintiff provided this doctor's note to Defendants and is informed and believes that her doctor's office also faxed this doctor's note to Defendants.

40. On or about May 21, 2019, Plaintiff had a phone call with Defendants' Workforce Ability Manager, Nancy Jones where Jones told Plaintiff that Defendants are considering terminating Plaintiff because Defendant could no longer accommodate Plaintiff's shellfish allergy disability.  During this phone call Jones also said words to the effect of "You don't fit the profile," "Your allergy is not our problem," and "We can do whatever we want," referring to Plaintiff's disability and possible termination.

41. On or about June 6, 2019, Defendants held a meeting with Plaintiff where Plaintiff had to choose between two options: 1) Plaintiff could work a reduced work schedule of thirty-two (32) hours per week with the condition that Plaintiff would be terminated "if anything were to happen," or 2) Plaintiff would be demoted to the Assistant Receiver position and continue working her regular full time hours. In fear of being terminated, Plaintiff chose to be demoted to the Assistant Receiver position.

42. On or about June 10, 2019, Defendant's Manager of Compensation Taryn Alba emailed Plaintiff stating that Plaintiff's hourly pay rate would be reduced with her demotion to Assistant Receiver.  Plaintiff is informed and believes that Defendants have demoted other employee's classification to Assistant Receiver without reducing the employee's pay.

43. On or about July 14, 2019, Defendants began scheduling Plaintiff as an Assistant Receiver at a decreased pay rate. However, Defendants continued to intermittently assign Plaintiff to work shifts as a Receiver, at the Assistant Receiver pay rate, because of Plaintiff's previous "job knowledge" of the higher-level position, despite Plaintiff's demotion to Assistant Receiver.

44. On or about September 20, 2019, Plaintiff submitted a request on Defendants' online employee portal to be reclassified to the Receiver position.

45. On or about October 29, 2019, Defendants denied Plaintiff's job reclassification request. Plaintiff continues to be employed with Defendants as an Assistant Receiver at the decreased pay rate.

46. Plaintiff filed an administrative complaint with the Department of Fair Employment and Housing ("DFEH"). On May 14, 2020, the DFEH issued Plaintiff a right to sue letter, attached here as Exhibit A. On May 20, 2020 the DFEH issued Plaintiff and amended right to sue letter, attached as Exhibit B.

## FIRST CAUSE OF ACTION

**(Disability Discrimination – Violation of Govt. Code §12940(a))**

**(Plaintiff against Defendants Disney Parks, Disney Worldwide, Keystone, and DOES 1-10)**

47. Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

48. At all times relevant to this Complaint, the Fair Employment and Housing Act ("FEHA") codified in Government Code §12900 *et seq.* was in full force and effect and makes it unlawful for an employer to discriminate against an employee because of the employee's actual or perceived disability.

49. Pursuant to Government Code §§ 12926 and 12926.1, Plaintiff has an actual or perceived disability, was limited in major life activities, had a record of a disability, and was regarded as or treated as having a disability by Defendants.

50. Defendants engaged in unlawful employment practices in violation of the FEHA including, but not limited to, failing to accommodate Plaintiff on the basis of actual or perceived disability, reducing Plaintiff's pay, reducing Plaintiff's scheduled work hours, and demoting Plaintiff.

51. Plaintiff is informed and believes and thereon alleges that the actual or perceived disability was a motivating factor in Defendants' decision to reduce

1 | Plaintiff's pay, reduce Plaintiff's working hours, and/or demote Plaintiff in violation
2 | of Government Code §12940(a).

3 | 52. As a proximate result of the wrongful conduct of Defendants, and each of
4 | them, Plaintiff has suffered and continues to sustain substantial losses in earnings
5 | and other employment benefits in an amount according to proof at the time of trial.

6 | 53. As a proximate result of the wrongful conduct of Defendants, and each of
7 | them, Plaintiff has suffered emotional distress and other general damages, in an
8 | amount according to proof at the time of trial.

9 | 54. Pursuant to Code of Civil Procedure §1060, Petitioner/Plaintiff requests
10 | this Court to issue a judicial determination of the rights and duties of the
11 | parties.   A judicial declaration is necessary and appropriate such that Defendants
12 | may also be aware of its obligations under the law to not engage in discriminatory
13 | practices.  Plaintiff believes and thereon alleges that Plaintiff is entitled to
14 | declaratory relief and an award of reasonable attorney's fees and costs under CGC
15 | section 12965(b).  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (Cal. 2013)

16 | 55. The actions of Defendants as alleged herein were carried out with malice,
17 | willfulness or reckless indifference, or any combination thereof, to the rights of
18 | Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive
19 | Plaintiff of rights guaranteed under the law. Plaintiff is entitled to punitive
20 | damages for the purpose of deterring such unlawful, malicious, oppressive or
21 | reckless conduct, or any combination thereof.  Defendants' conduct described herein
22 | was engaged in by officers, directors, or managing agents, or any combination
23 | thereof, for the Defendant or ratified by officers, directors, or managing agents, or
24 | any combination thereof.

25 | 56. Plaintiff has incurred and continues to incur attorneys' fees and legal
26 | expenses in an amount according to proof at the time of trial.

27 | ///

28 | ///

## SECOND CAUSE OF ACTION

### (Failure to Accommodate Disability – Govt. Code §12940(m))

### (Plaintiff against Defendants Disney Parks, Disney Worldwide, Keystone, and DOES 1-10)

57. Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

58. Government Code §12940(m) provides that it is unlawful for an employer to fail to make a reasonable accommodation for the actual or perceived disability of an employee.

59. Defendants failed to make a reasonable accommodation for Plaintiff's actual or perceived disability.

60. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

61. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered emotional distress and other general damages, in an amount according to proof at the time of trial.

62. Pursuant to Code of Civil Procedure §1060, Petitioner/Plaintiff requests this Court to issue a judicial determination of the rights and duties of the parties.   A judicial declaration is necessary and appropriate such that Defendants may also be aware of its obligations under the law to not engage in discriminatory practices.  Plaintiff believes and thereon alleges that Plaintiff is entitled to declaratory relief and an award of reasonable attorney's fees and costs under CGC section 12965(b). *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (Cal. 2013)

63. The actions of Defendants as alleged herein were carried out with malice, willfulness or reckless indifference, or any combination thereof, to the rights of Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive Plaintiff of rights guaranteed under the law. Plaintiff is entitled to punitive

damages for the purpose of deterring such unlawful, malicious, oppressive or reckless conduct, or any combination thereof.  Defendants' conduct described herein was engaged in by officers, directors, or managing agents, or any combination thereof, for the Defendant or ratified by officers, directors, or managing agents, or any combination thereof.

64. Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

### THIRD CAUSE OF ACTION

**(Failure to Engage in the Interactive Process - Govt. Code §12940(n))**

**(Plaintiff against Defendants Disney Parks, Disney Worldwide, Keystone, and DOES 1-10)**

65. Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

66. Government Code §12940(n) provides that it is unlawful for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any.

67. Defendants failed to engage in the interactive process with Plaintiff in order to accommodate Plaintiff's actual or perceived disability.

68. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

69. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered emotional distress and other general damages, in excess of eighty thousand dollars, in an amount according to proof at the time of trial.

70. Pursuant to Code of Civil Procedure §1060, Petitioner/Plaintiff requests this Court to issue a judicial determination of the rights and duties of the parties.  A judicial declaration is necessary and appropriate such that Defendants may also be aware of its obligations under the law to not engage in discriminatory

practices. Plaintiff believes and thereon alleges that Plaintiff is entitled to declaratory relief and an award of reasonable attorney's fees and costs under CGC section 12965(b). *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (Cal. 2013)

71. The actions of Defendants as alleged herein were carried out with malice, willfulness or reckless indifference, or any combination thereof, to the rights of Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive Plaintiff of rights guaranteed under the law. Plaintiff is entitled to punitive damages for the purpose of deterring such unlawful, malicious, oppressive or reckless conduct, or any combination thereof. Defendants' conduct described herein was engaged in by officers, directors, or managing agents, or any combination thereof, for the Defendant or ratified by officers, directors, or managing agents, or any combination thereof.

72. Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

### (Violation of California Family Rights Act – Govt Code § 12945.2)
### (Plaintiff against Defendants Disney Parks, Disney Worldwide, Keystone, and DOES 1-10)

73. Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

74. At all times herein mentioned, Government Code Section 12945.2 was in full force and effect and was binding upon Defendants. Government Code Section 12945.2(a) states that an employer with at least fifty employees must provide protected leave of twelve weeks to any employee who has worked for the employer for more than 12 months, and who has worked at least 1,250 hours during the previous 12-month period. Government Code Section 12945.2(t) states that it is an unlawful employment practice for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this section.

75. Plaintiff was eligible for CFRA protected leave in May 2019 in both hours worked and time employed by Defendants. Defendants were covered by the CFRA because they employ at least fifty employees in a seventy-five mile radius.

76. Plaintiff is informed and believes and thereon alleges that the acts of Defendants in, among other things, failing to accommodate her, reducing her pay, and demoting her because she took intermittent leave related to her own serious medical condition which was known to her employer and which qualified for protected leave under the CFRA is an unlawful employment practice in violation of the CFRA. Defendant interfered with and retaliated against Plaintiff by refusing to accommodate her and terminating her. Defendant also failed to properly provide Plaintiff notice of her rights and other required information under the CFRA.

77. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

78. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered emotional distress and other general damages, in an amount according to proof at the time of trial.

79. Pursuant to Code of Civil Procedure §1060, Petitioner/Plaintiff requests this Court to issue a judicial determination of the rights and duties of the parties. A judicial declaration is necessary and appropriate such that Defendants may also be aware of its obligations under the law to not engage in discriminatory practices. Plaintiff believes and thereon alleges that Plaintiff is entitled to declaratory relief and an award of reasonable attorney's fees and costs under CGC section 12965(b). *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (Cal. 2013)

80. The actions of Defendants as alleged herein were carried out with malice, willfulness or reckless indifference, or any combination thereof, to the rights of Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive Plaintiff of rights guaranteed under the law. Plaintiff is entitled to punitive

damages for the purpose of deterring such unlawful, malicious, oppressive or reckless conduct, or any combination thereof.  Defendants' conduct described herein was engaged in by officers, directors, or managing agents, or any combination thereof, for the Defendant or ratified by officers, directors, or managing agents, or any combination thereof.

81. Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

### FIFTH CAUSE OF ACTION

**(Disability Harassment, Hostile Work Environment –**

**Violation of Cal. Gov't Code §§ 12940(j); 12923)**

**(Against All Defendants)**

82. Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

83. The Fair Employment and Housing Act codified in Government Code § 12940 makes it unlawful for an employer to harass an employee because of her disability.

84. The Fair Employment and Housing Act codified in Government Code § 12923 sets forth the Legislative intent with regard to application of the laws about harassment contained in the FEHA, including that harassment cases are rarely appropriate for disposition on summary judgment.

85. Section 12923(a) states, among other things, that harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being.

86. Section 12923(b) states, among other things, that a single incident of

harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

87. Section 12923(c) states, among other things, that the existence of a hostile work environment depends upon the totality of the circumstances and a discriminatory remark, even if not made directly in the context of an employment decision or uttered by a nondecisionmaker, may be relevant, circumstantial evidence of discrimination.

88. Defendants and each of them and/or their agents/employees engaged in a pattern and practice of unlawful disability harassment in violation of California Fair Employment and Housing Act of California Government Code §12940(j).

89. The harassment was sufficiently severe or pervasive as to alter conditions of employment and to create a hostile or abusive work environment.

90. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

91. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered emotional distress and other general damages, in an amount according to proof at the time of trial.

92. Pursuant to Code of Civil Procedure §1060, Petitioner/Plaintiff requests this Court to issue a judicial determination of the rights and duties of the parties. A judicial declaration is necessary and appropriate such that Defendants may also be aware of its obligations under the law to not engage in discriminatory practices. Plaintiff believes and thereon alleges that Plaintiff is entitled to declaratory relief and an award of reasonable attorney's fees and costs under CGC section 12965(b). *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (Cal. 2013)

93. The actions of Defendants as alleged herein were carried out with malice,

1  willfulness or reckless indifference, or any combination thereof, to the rights of

2  Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive

3  Plaintiff of rights guaranteed under the law. Plaintiff is entitled to punitive

4  damages for the purpose of deterring such unlawful, malicious, oppressive or

5  reckless conduct, or any combination thereof.  Defendants' conduct described herein

6  was engaged in by officers, directors, or managing agents, or any combination

7  thereof, for the Defendant or ratified by officers, directors, or managing agents, or

8  any combination thereof.

9      94. Plaintiff has incurred and continues to incur attorneys' fees and legal

10  expenses in an amount according to proof at the time of trial.

## SIXTH CAUSE OF ACTION

### (Retaliation – Violation of Cal. Gov't Code §12940(m)(2))

### (Plaintiff against Defendants Disney Parks, Disney Worldwide, Keystone, and DOES 1-10)

15      95. Plaintiff restates and incorporates by reference each and every allegation

16  contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

17      96. Plaintiff engaged in the protected activities of, but not limited to,

18  requesting a reasonable accommodation for an actual or perceived disability.

19      97. Defendants retaliated in violation of the FEHA by engaging in unlawful

20  employment practices including, but not limited to refusing to accommodate

21  Plaintiff on the basis of her actual or perceived disability, reducing Plaintiff's pay,

22  reducing Plaintiff's hours, and demoting Plaintiff.

23      98. As a proximate result of the wrongful conduct of Defendants, and each of

24  them, Plaintiff has suffered and continues to sustain substantial losses in earnings

25  and other employment benefits in an amount according to proof at the time of trial.

26      99. As a proximate result of the wrongful conduct of Defendants, and each of

27  them, Plaintiff has suffered emotional distress and other general damages, in an

28  amount according to proof at the time of trial.

100.    Pursuant to Code of Civil Procedure §1060, Petitioner/Plaintiff requests this Court to issue a judicial determination of the rights and duties of the parties.   A judicial declaration is necessary and appropriate such that Defendants may also be aware of its obligations under the law to not engage in discriminatory practices.   Plaintiff believes and thereon alleges that Plaintiff is entitled to declaratory relief and an award of reasonable attorney's fees and costs under CGC section 12965(b).   *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (Cal. 2013)

101.    The actions of Defendants as alleged herein were carried out with malice, willfulness or reckless indifference, or any combination thereof, to the rights of Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive Plaintiff of rights guaranteed under the law. Plaintiff is entitled to punitive damages for the purpose of deterring such unlawful, malicious, oppressive or reckless conduct, or any combination thereof.   Defendants' conduct described herein was engaged in by officers, directors, or managing agents, or any combination thereof, for the Defendant or ratified by officers, directors, or managing agents, or any combination thereof.

102.    Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

## SEVENTH CAUSE OF ACTION

### (Retaliation – Violation of Cal. Gov't Code §12940(h))

### (Plaintiff against Defendants Disney Parks, Disney Worldwide, Keystone, and DOES 1-10)

103.    Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

104.    Plaintiff engaged in the protected activities of, but not limited to, opposing disability harassment and discrimination by Defendants.

105.    Defendants retaliated in violation of the FEHA by, including but not

limited to, reducing Plaintiff's pay, reducing Plaintiff's working hours, and demoting Plaintiff.

106.   As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

107.   As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered emotional distress and other general damages, in an amount according to proof at the time of trial.

108.   Pursuant to Code of Civil Procedure §1060, Petitioner/Plaintiff requests this Court to issue a judicial determination of the rights and duties of the parties.   A judicial declaration is necessary and appropriate such that Defendants may also be aware of its obligations under the law to not engage in discriminatory practices.   Plaintiff believes and thereon alleges that Plaintiff is entitled to declaratory relief and an award of reasonable attorney's fees and costs under CGC section 12965(b).   Harris v. City of Santa Monica, 56 Cal. 4th 203, 241 (Cal. 2013)

109.   The actions of Defendants as alleged herein were carried out with malice, willfulness or reckless indifference, or any combination thereof, to the rights of Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive Plaintiff of rights guaranteed under the law. Plaintiff is entitled to punitive damages for the purpose of deterring such unlawful, malicious, oppressive or reckless conduct, or any combination thereof.   Defendants' conduct described herein was engaged in by officers, directors, or managing agents, or any combination thereof, for the Defendant or ratified by officers, directors, or managing agents, or any combination thereof.

110.   Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

///

## EIGHTH CAUSE OF ACTION

### (Failure to Prevent Discrimination, Harassment and Retaliation – Violation of Cal. Gov't Code §12940(k))

### (Plaintiff against Defendants Disney Parks, Disney Worldwide, Keystone, and DOES 1-10)

111.   Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 46, inclusive, as though fully set forth herein.

112.   To Plaintiff's knowledge, no meaningful or adequate disciplinary action has been taken against any employees who discriminated, harassed, or retaliated, or any combination thereof, against Plaintiff.

113.   In violation of Cal. Gov. Code §12940(k), Defendants and each of them, and/or their agents/employees, failed to take all reasonable steps necessary to prevent and investigate unlawful discrimination, harassment, and/or retaliation from occurring, and to remedy such discrimination, harassment, or retaliation.

114.   As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

115.   As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered emotional distress and other general damages, in an amount according to proof at the time of trial.

116.   Pursuant to Code of Civil Procedure §1060, Petitioner/Plaintiff requests this Court to issue a judicial determination of the rights and duties of the parties.   A judicial declaration is necessary and appropriate such that Defendants may also be aware of its obligations under the law to not engage in discriminatory practices.   Plaintiff believes and thereon alleges that Plaintiff is entitled to declaratory relief and an award of reasonable attorney's fees and costs under CGC

section 12965(b). *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (Cal. 2013)

117. The actions of Defendants as alleged herein were carried out with malice, willfulness or reckless indifference, or any combination thereof, to the rights of Plaintiff, with full knowledge of their unlawfulness, and with the intent to deprive Plaintiff of rights guaranteed under the law. Plaintiff is entitled to punitive damages for the purpose of deterring such unlawful, malicious, oppressive or reckless conduct, or any combination thereof. Defendants' conduct described herein was engaged in by officers, directors, or managing agents, or any combination thereof, for the Defendant or ratified by officers, directors, or managing agents, or any combination thereof.

118. Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

///
///
///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment as follows:

1. For an award of damages in an amount according to proof with interest thereon;

2. For compensatory and general damages in an amount according to proof;

3. For past and future lost income and benefits;

4. For punitive damages;

5. For declaratory relief;

6. For injunctive relief;

7. For an award of reasonable attorneys' fees, costs and interest thereon pursuant to Code of Civil Procedure section 1021.5, Govt. Code section 12940 et seq., and/or all other applicable law; and

8. For such other and further relief as this Court deems just and proper.

Dated: May 20, 2020                    THE MYERS LAW GROUP, A.P.C.

                                       By: _____
                                           David P. Myers
                                           Ann Hendrix
                                           Morgan J. Good
                                           Attorneys for Plaintiff Donna May

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury in this action.

Dated: May 20, 2020                    THE MYERS LAW GROUP, A.P.C.

                                       By: _____
                                           David P. Myers
                                           Ann Hendrix
                                           Morgan J. Good
                                           Attorneys for Plaintiff Donna May

EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

May 14, 2020

Morgan Good
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730

RE:    **Notice to Complainant's Attorney**
       DFEH Matter Number: 202005-10162814
       Right to Sue: May / Walt Disney Parks and Resorts U.S. et al.

Dear Morgan Good:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

May 14, 2020

RE:     **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 202005-10162814
        Right to Sue: May / Walt Disney Parks and Resorts U.S. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

May 14, 2020

Donna May
2251 Grand Ave.
Long Beach, California 90815

RE:    **Notice of Case Closure and Right to Sue**
       DFEH Matter Number: 202005-10162814
       Right to Sue: May / Walt Disney Parks and Resorts U.S. et al.

Dear Donna May,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 14, 2020 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Donna May                                     DFEH No. 202005-10162814

                    Complainant,

vs.

Walt Disney Parks and Resorts U.S.
500 South Buena Vista Dr.
Burank, California 91521

Disney Worldwide Services, Inc.
500 S Buena Vista St.
Burbank, California 91521

Keystone Paying Agent, Inc.
500 S Buena Vista St.
Burbank, California 91521

                    Respondents

---

1. Respondent **Walt Disney Parks and Resorts U.S.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Donna May**, resides in the City of **Long Beach** State of **California.**

3. Complainant alleges that on or about **July 14, 2019**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's family care or medical leave (cfra) (employers of 50 or more people), disability (physical or mental), age (40 and over).

**Complainant was discriminated against** because of complainant's family care or medical leave (cfra) (employers of 50 or more people), disability (physical or mental), age (40 and over) and as a result of the discrimination was denied hire or promotion,

-1-
*Complaint – DFEH No. 202005-10162814*

Date Filed: May 14, 2020

reprimanded, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), denied work opportunities or assignments, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, participated as a witness in a discrimination or harassment complaint, requested or used leave under the california family rights act or fmla (employers of 50 or more people) and as a result was denied hire or promotion, reprimanded, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), denied or forced to transfer.

**Additional Complaint Details:** Respondents have employed Claimant since approximately 1989 in food and beverage locations at Respondents' Disneyland Resort.  Claimant is currently employed with Respondents as an Assistant Receiver.  Prior to approximately July 14, 2019, Claimant was working for Respondents as a Lead Receiver at a higher pay rate.

Throughout Claimant's employment, Claimant informed Respondents of her various disabilities, including but not limited to her shellfish allergy, and related work restrictions.  Claimant has kept Respondents informed of her disabilities by providing doctors notes and is also informed and believes that her doctor's office has faxed notes regarding Claimant's disabilities and related work restrictions to Respondents.  Starting in or about 2010, Claimant filled out Respondents' Certification of Health Care Provider (Family and Medical Leave Act/California Family Rights Act) form for intermittent medical leave.  Claimant filled out the paperwork for intermittent medical leave because whenever Claimant called out sick from work due to her disabilities without providing a doctor's note, she would receive negative points that would lead to disciplinary action.  Once Claimant qualified for intermittent FMLA leave, Claimant was able to call out sick from work due to her disabilities without receiving negative disciplinary points.  During Claimant's employment, Claimant annually filled out intermittent leave paperwork due to her disabilities so that she would not be disciplined for days she called out sick due to her disabilities.  Claimant last provided Respondents with a completed Certification of Health Care Provider form on or about June 17, 2019.

On or about January 28, 2010, Claimant's doctor issued work restrictions to Respondents stating that Claimant needed to avoid areas where fish is being cooked due to Claimant's shellfish allergy disability. Claimant notified Respondents of her work restrictions and shellfish allergy disability and provided Respondents with related doctor's notes.  Claimant is informed and believes that her doctor's

-2-
*Complaint – DFEH No. 202005-10162814*

Date Filed: May 14, 2020

office also faxed medical notes to Respondents regarding Claimant's shellfish allergy disability and related work restrictions.

Starting in or about September 2014 until approximately June 2017, Respondents scheduled Claimant to work five (5) Lead Receiver Shifts at Respondents' Hungry Bear restaurant to accommodate Claimant's shellfish allergy disability because shellfish items were not on the menu at Hungry Bear.

Starting in or about June 2017, Claimant was no longer able to work five Lead Receiver Shifts at Respondents' Hungry Bear restaurant because Hungry Bear started serving a seafood menu item on an intermittent basis for Respondents' theater production "Fantasmic!" Because Claimant could not work at Hungry Bear on days seafood was being served for the "Fantasmic!" theater production, Respondents' Area Manager Jeff Casulas scheduled Claimant to work in Respondents' other restaurants on those days.  Casulas also scheduled Claimant to work a double-shift at Hungry Bear one day per week when "Fantasmic!" was not in operation.

In or about July 2017, Respondents started scheduling Claimant to work both host shifts and lead shifts because of her shellfish allergy and changes to her schedule; during host shifts Claimant earned a lower hourly rate.

On or about July 29, 2017, Claimant emailed Respondents' Receiving Manager, Joe Velasco informing him that Respondents' Cook, Marilu Luna – who was in a lower job classification than Claimant – had been scheduled to receive training to become a Lead Shift Receiver at Respondents' Market House Restaurant. In this same email, Claimant requested to be trained to work lead shifts at Market House so that Claimant could have five lead shifts a week working at just one of Respondents' Restaurants. Respondents' Market House Restaurant is a restaurant serving coffee items, breakfast, and pastries; Claimant is informed and believes that Market House does not have seafood items on its menu.

Shortly after Claimant's email on or about July 29, 2017, Claimant submitted a Cross Training Interest Form on Respondents' online employee portal requesting that Claimant be trained to work lead shifts at Market House.

In or about August 2017, Respondents' Food and Beverage Stage Manager Beverly Chan called Claimant and informed her that Respondents would not provide Claimant with training to work lead shifts at Market House. After this call, Claimant continued working lead and host shifts at Hungry Bear and Respondents' other restaurants around the "Fantasmic!" theater production schedule.

In or about early 2018, Claimant again submitted a Cross Training Interest Form on Respondents' online employee portal requesting training for Claimant to work lead shifts at Market House. Respondent never responded to Claimant's request.

In or about May 2018, Respondents' Production Manager, and Claimant's direct supervisor at Hungry Bear, Jeff Duggan told Claimant that her shellfish allergy disability could no longer be accommodated at Hungry Bear because food products that had been stored in other locations before being delivered to Hungry Bear could be "cross-contaminated" with shrimp.  Following this conversation, Respondents no

-3-

Date Filed: May 14, 2020

longer scheduled Claimant's shifts at Hungry Bear and scheduled Claimant to work less lead shifts and more host shifts, at a lower pay rate, at Respondents' other restaurants. After Claimant stopped being scheduled to work shifts at Hungry Bear, Claimant notified Receiving Manager Joe Velasco that her shellfish allergy disability was no longer being accommodated.

On or about July 8, 2018, Claimant emailed Respondents' Area Manager Pam Nieblas asking whether Respondents' had a response to Claimant's prior Cross Training Interest Form Claimant submitted in early 2018 requesting to be trained to work lead shifts at Market House.  In this email Claimant noted that she was aware of three other employees with lower job classifications than Claimant being trained as Lead Shift Receivers at Respondents' Market House restaurant.

On or about July 27, 2018, after not receiving a response from Respondents' Area Manager Nieblas, Claimant emailed Nieblas again following up on her prior email requesting to be trained to work lead shifts at Market House.  Nieblas did not respond to Claimant's emails.

On or about August 9, 2018, Respondents' Area Manager Thomas Truong asked Claimant to provide Respondents with an updated doctor's note so Respondents could determine whether Claimant could work in the presence of fish with her disability. That same day, Claimant provided a doctor's note to Respondents stating that Claimant may work with any fish except shellfish.  Claimant is informed and believes that her doctor's office also faxed this doctor's note to Respondents that same day.

On or about August 16, 2018, Respondents' Case Advocate of Accommodations Linda Pelly emailed Claimant stating that her shellfish allergy disability, and related work restrictions, could be accommodated in Claimant's work area, per Manager Steve Coughlin.

In or about Summer 2018, Claimant complained to Respondents' Receiving Manager Joe Velasco that Respondents' Production Manager Jeff Duggan was not scheduling Claimant to work at Hungry Bear, that Duggan does not want Claimant working at Hungry Bear, and that Claimant believes Duggan will stop at nothing to get rid of Claimant.  Claimant also complained to Velasco that she was being scheduled to work numerous host shifts, at a lower rate of pay, rather than working only in lead shifts.

Starting on or about September 3, 2018, after Claimant's complaints to Velasco, Respondents scheduled Claimant to work back at Hungry Bear on a regular basis.

On or about September 18, 2018, Claimant complained to Respondents' Labor Relations Area Manager Valarie Howard that Respondents' Production Manager Jeff Duggan had refused to accommodate Claimant's shellfish allergy disability, that Claimant believed Duggan intended to terminate her, and that Duggan had issued a write up to Claimant that Claimant believed was unwarranted, untrue, and retaliatory.

On or about October 1, 2018, Duggan called Claimant and told her that she could no longer work at Hungry Bear, and Claimant needed to call Respondents' Scheduling Department for further information.  That same day, Claimant contacted

-4-

Date Filed: May 14, 2020

Respondents' Scheduling Department, who informed Claimant that the Scheduling Department was unaware of Duggan's scheduling change for Claimant.

From approximately October 2, 2018 to October 12, 2018, Respondents scheduled Claimant to work, and Claimant worked, lead shifts at Respondent's Village House restaurant.

In or about October 2018, Respondents' Labor Relations Area Manager Valarie Howard and Respondents' Area Manager Thomas Truong authorized Claimant to change any of her scheduled host shifts to lead shifts using Respondents' workforce management software, WorkBrain, so that Claimant would no longer be paid a lower hourly rate during host shifts.

On or about November 14, 2018, Claimant submitted a Cross Training Interest Form on Respondents' online employee portal requesting training for Claimant to work lead shifts at Respondents' Market House restaurant. That same day, Respondents emailed Claimant a denial of her request and instructed Claimant to speak with her Area Leaders to apply for Lead Training.

On or about November 15, 2018, Claimant emailed Respondents' Labor Relations Area Manager Valerie Howard and Respondents' Manager Steve Coughlin informing them that Respondents' had denied Claimant's request to receive lead shift training at Respondents' Market House restaurant and Respondents denied her request to work at Respondents' Pizza Port restaurant because of Claimant's disabilities. Claimant also informed Howard that she was not being scheduled for lead receiver shifts at the higher pay rate, and thus had to change her pay rate using WorkBrain on most shifts.

In or about February 2019, Respondents' Production Manager Jeff Duggan became Claimant's supervisor at Respondents' Fan Toon restaurants where Claimant was working. Shortly after becoming Claimant's supervisor, Duggan told Claimant that she would no longer be scheduled to work full time in Respondents' Fan Toon restaurants because the restaurants did not have enough workload. Claimant is informed and believes that Duggan was attempting to get Claimant moved out of his management area.

On or about March 27, 2019, Respondents' Production Manager Jeff Duggan demanded Claimant tell him what manager had authorized her to receive her lead shift pay rate during host shifts. Claimant responded to Duggan showing him emails from Respondents' Labor Relations Area Manager Valarie Howard and Area Manager Thomas Truong authorizing Claimant to adjust her pay rate whenever she worked host shifts. After discussing this with Claimant, Duggan told Claimant she was no longer allowed to use Respondents' workforce management software Workbrain on any shifts, including Claimant's lead shifts that required her to use Workbrain as part of her duties as a Lead Receiver. Duggan also told Claimant the she would no longer be paid the lead shift rate when working host shifts.

On or about May 5, 2019, Claimant called Respondents' Lead Receiver Mark Fukushima asking if there was any shellfish being stored in Respondents' Pizza Port restaurant's freezer because Claimant had upcoming shifts scheduled at Pizza Port.

-5-

Date Filed: May 14, 2020

Fukashima confirmed that shrimp was being stored in the Pizza Port freezer and chefs at Pizza Port were working on a shrimp salad and pasta menu item. Fukashima followed the phone call with an email and an attached picture of a box labeled "shrimp" in the Pizza Port freezer.  That same day, Claimant emailed Respondents' management asking to be removed from her upcoming shifts at Pizza Port, and to move to a different location due to shellfish being stored at Pizza Port and Claimant's shellfish allergy disability.  Claimant is informed and believes that Respondents intentionally store an unused box labeled "shrimp" in the freezer at Pizza Port to prevent Claimant from being able to work shifts at Pizza Port.

In or about May 2019, Respondents' Production Manager Duggan instructed Claimant to provide him with an updated doctor's note stating whether Claimant could be exposed to cooked shrimp or uncooked shrimp.

On or about May 11, 2019, Claimant provided a doctor's note clarifying that Claimant cannot be exposed to the cooking of shellfish, she may safely work near a freezer where shellfish is kept, but she should not open or reclose frozen containers containing shellfish. Claimant provided this doctor's note to Respondents and is informed and believes that her doctor's office also faxed this doctor's note to Respondents.

On or about May 21, 2019, Claimant had a phone call with Respondents' Workforce Ability Manager, Nancy Jones where Jones told Claimant that Respondents are considering terminating Claimant because Respondent could no longer accommodate Claimant's shellfish allergy disability.  During this phone call Jones also said words to the effect of "You don't fit the profile," "Your allergy is not our problem," and "We can do whatever we want," referring to Claimant's disability and possible termination.

On or about June 6, 2019, Respondents held a meeting with Claimant where Claimant had to choose between two options: 1) Claimant could work a reduced work schedule of thirty-two (32) hours per week with the condition that Claimant would be terminated "if anything were to happen," or 2) Claimant would be demoted to the Assistant Receiver position and continue working her regular full time hours. In fear of being terminated, Claimant chose to be demoted to the Assistant Receiver position.

On or about June 10, 2019, Respondent's Manager of Compensation Taryn Alba emailed Claimant stating that Claimant's hourly pay rate would be reduced with her demotion to Assistant Receiver.  Claimant is informed and believes that Respondents have demoted other employee's classification to Assistant Receiver without reducing the employee's pay.

On or about July 14, 2019, Respondents began scheduling Claimant as an Assistant Receiver at a decreased pay rate. However, Respondents continued to intermittently assign Claimant to work shifts as a Receiver, at the Assistant Receiver pay rate, because of Claimant's previous "job knowledge" of the higher-level position, despite Claimant's demotion to Assistant Receiver.  P

-6-

*Complaint – DFEH No. 202005-10162814*

Date Filed: May 14, 2020

1   On or about September 20, 2019, Claimant submitted a request on Respondents'
    online employee portal to be reclassified to the Receiver position.
2   On or about October 29, 2019, Respondents denied Claimant's job reclassification
3   request.  Claimant continues to be employed with Respondents as an Assistant
    Receiver at the decreased pay rate.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          -7-
                                 *Complaint – DFEH No. 202005-10162814*

28   Date Filed: May 14, 2020

VERIFICATION

I, **Morgan J. Good**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On May 14, 2020, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Lompoc, California**

-8-
*Complaint – DFEH No. 202005-10162814*

Date Filed: May 14, 2020

EXHIBIT B



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency         GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**     KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

May 20, 2020

Morgan Good
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730

RE: **Notice to Complainant's Attorney**
DFEH Matter Number: 202005-10162814
Right to Sue: May / Walt Disney Parks and Resorts U.S.

Dear Morgan Good:

Attached is a copy of your **amended** complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq.

Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your client must serve the complaint.

The amended complaint is deemed to have the same filing date of the original complaint. This is not a new Right to Sue letter. The original Notice of Case Closure and Right to Sue issued in this case remains the only such notice provided by the DFEH. (Cal. Code Regs., tit. 2, § 10022.)

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Donna May                                                      DFEH No. 202005-10162814

                              Complainant,

vs.

Walt Disney Parks and Resorts U.S.
500 South Buena Vista Dr.
Burank, California 91521

Disney Worldwide Services, Inc.
500 S Buena Vista St.
Burbank, California 91521

Keystone Paying Agent, Inc.
500 S Buena Vista St.
Burbank, California 91521

Jeff Duggan

                              Respondents

_____

1. Respondent **Walt Disney Parks and Resorts U.S.**  is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Donna May**, resides in the City of **Long Beach** State of **California.**

3. Complainant alleges that on or about **July 14, 2019**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's family care or medical leave (cfra) (employers of 50 or more people), disability (physical or mental), age (40 and over).

-1-
*Complaint – DFEH No. 202005-10162814*

Date Filed: May 14, 2020
Date Amended: May 20, 2020

**Complainant was discriminated against** because of complainant's family care or medical leave (cfra) (employers of 50 or more people), disability (physical or mental), age (40 and over) and as a result of the discrimination was denied hire or promotion, reprimanded, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), denied work opportunities or assignments, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, participated as a witness in a discrimination or harassment complaint, requested or used leave under the california family rights act or fmla (employers of 50 or more people) and as a result was denied hire or promotion, reprimanded, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), denied or forced to transfer.

**Additional Complaint Details:** Respondents have employed Claimant since approximately 1989 in food and beverage locations at Respondents' Disneyland Resort.  Claimant is currently employed with Respondents as an Assistant Receiver.  Prior to approximately July 14, 2019, Claimant was working for Respondents as a Lead Receiver at a higher pay rate.

Throughout Claimant's employment, Claimant informed Respondents of her various disabilities, including but not limited to her shellfish allergy, and related work restrictions.  Claimant has kept Respondents informed of her disabilities by providing doctors notes and is also informed and believes that her doctor's office has faxed notes regarding Claimant's disabilities and related work restrictions to Respondents.

Starting in or about 2010, Claimant filled out Respondents' Certification of Health Care Provider (Family and Medical Leave Act/California Family Rights Act) form for intermittent medical leave.  Claimant filled out the paperwork for intermittent medical leave because whenever Claimant called out sick from work due to her disabilities without providing a doctor's note, she would receive negative points that would lead to disciplinary action.  Once Claimant qualified for intermittent FMLA leave, Claimant was able to call out sick from work due to her disabilities without receiving negative disciplinary points.  During Claimant's employment, Claimant annually filled out intermittent leave paperwork due to her disabilities so that she would not be disciplined for days she called out sick due to her disabilities.  Claimant last provided Respondents with a completed Certification of Health Care Provider form on or about June 17, 2019.

On or about January 28, 2010, Claimant's doctor issued work restrictions to Respondents stating that Claimant needed to avoid areas where fish is being

-2-
Complaint – DFEH No. 202005-10162814

Date Filed: May 14, 2020
Date Amended: May 20, 2020

cooked due to Claimant's shellfish allergy disability. Claimant notified Respondents of her work restrictions and shellfish allergy disability and provided Respondents with related doctor's notes. Claimant is informed and believes that her doctor's office also faxed medical notes to Respondents regarding Claimant's shellfish allergy disability and related work restrictions.

Starting in or about September 2014 until approximately June 2017, Respondents scheduled Claimant to work five (5) Lead Receiver Shifts at Respondents' Hungry Bear restaurant to accommodate Claimant's shellfish allergy disability because shellfish items were not on the menu at Hungry Bear.

Starting in or about June 2017, Claimant was no longer able to work five Lead Receiver Shifts at Respondents' Hungry Bear restaurant because Hungry Bear started serving a seafood menu item on an intermittent basis for Respondents' theater production "Fantasmic!" Because Claimant could not work at Hungry Bear on days seafood was being served for the "Fantasmic!" theater production, Respondents' Area Manager Jeff Casulas scheduled Claimant to work in Respondents' other restaurants on those days. Casulas also scheduled Claimant to work a double-shift at Hungry Bear one day per week when "Fantasmic!" was not in operation.

In or about July 2017, Respondents started scheduling Claimant to work both host shifts and lead shifts because of her shellfish allergy and changes to her schedule; during host shifts Claimant earned a lower hourly rate.

On or about July 29, 2017, Claimant emailed Respondents' Receiving Manager, Joe Velasco informing him that Respondents' Cook, Marilu Luna – who was in a lower job classification than Claimant – had been scheduled to receive training to become a Lead Shift Receiver at Respondents' Market House Restaurant. In this same email, Claimant requested to be trained to work lead shifts at Market House so that Claimant could have five lead shifts a week working at just one of Respondents' Restaurants. Respondents' Market House Restaurant is a restaurant serving coffee items, breakfast, and pastries; Claimant is informed and believes that Market House does not have seafood items on its menu.

Shortly after Claimant's email on or about July 29, 2017, Claimant submitted a Cross Training Interest Form on Respondents' online employee portal requesting that Claimant be trained to work lead shifts at Market House.

In or about August 2017, Respondents' Food and Beverage Stage Manager Beverly Chan called Claimant and informed her that Respondents would not provide Claimant with training to work lead shifts at Market House. After this call, Claimant continued working lead and host shifts at Hungry Bear and Respondents' other restaurants around the "Fantasmic!" theater production schedule.

In or about early 2018, Claimant again submitted a Cross Training Interest Form on Respondents' online employee portal requesting training for Claimant to work lead shifts at Market House.  Respondent never responded to Claimant's request.

In or about May 2018, Respondents' Production Manager, and Claimant's direct supervisor at Hungry Bear, Jeff Duggan told Claimant that her shellfish allergy

*Complaint – DFEH No. 202005-10162814*

Date Filed: May 14, 2020
Date Amended: May 20, 2020

disability could no longer be accommodated at Hungry Bear because food products that had been stored in other locations before being delivered to Hungry Bear could be "cross-contaminated" with shrimp. Following this conversation, Respondents no longer scheduled Claimant's shifts at Hungry Bear and scheduled Claimant to work less lead shifts and more host shifts, at a lower pay rate, at Respondents' other restaurants. After Claimant stopped being scheduled to work shifts at Hungry Bear, Claimant notified Receiving Manager Joe Velasco that her shellfish allergy disability was no longer being accommodated.

On or about July 8, 2018, Claimant emailed Respondents' Area Manager Pam Nieblas asking whether Respondents' had a response to Claimant's prior Cross Training Interest Form Claimant submitted in early 2018 requesting to be trained to work lead shifts at Market House.  In this email Claimant noted that she was aware of three other employees with lower job classifications than Claimant being trained as Lead Shift Receivers at Respondents' Market House restaurant.

On or about July 27, 2018, after not receiving a response from Respondents' Area Manager Nieblas, Claimant emailed Nieblas again following up on her prior email requesting to be trained to work lead shifts at Market House.  Nieblas did not respond to Claimant's emails.

On or about August 9, 2018, Respondents' Area Manager Thomas Truong asked Claimant to provide Respondents with an updated doctor's note so Respondents could determine whether Claimant could work in the presence of fish with her disability. That same day, Claimant provided a doctor's note to Respondents stating that Claimant may work with any fish except shellfish.  Claimant is informed and believes that her doctor's office also faxed this doctor's note to Respondents that same day.

On or about August 16, 2018, Respondents' Case Advocate of Accommodations Linda Pelly emailed Claimant stating that her shellfish allergy disability, and related work restrictions, could be accommodated in Claimant's work area, per Manager Steve Coughlin.

In or about Summer 2018, Claimant complained to Respondents' Receiving Manager Joe Velasco that Respondents' Production Manager Jeff Duggan was not scheduling Claimant to work at Hungry Bear, that Duggan does not want Claimant working at Hungry Bear, and that Claimant believes Duggan will stop at nothing to get rid of Claimant.  Claimant also complained to Velasco that she was being scheduled to work numerous host shifts, at a lower rate of pay, rather than working only in lead shifts.

Starting on or about September 3, 2018, after Claimant's complaints to Velasco, Respondents scheduled Claimant to work back at Hungry Bear on a regular basis.

On or about September 18, 2018, Claimant complained to Respondents' Labor Relations Area Manager Valarie Howard that Respondents' Production Manager Jeff Duggan had refused to accommodate Claimant's shellfish allergy disability, that Claimant believed Duggan intended to terminate her, and that Duggan had issued a write up to Claimant that Claimant believed was unwarranted, untrue, and retaliatory.

-4-
*Complaint – DFEH No. 202005-10162814*

Date Filed: May 14, 2020
Date Amended: May 20, 2020

1  On or about October 1, 2018, Duggan called Claimant and told her that she could no
2  longer work at Hungry Bear, and Claimant needed to call Respondents' Scheduling
   Department for further information. That same day, Claimant contacted
3  Respondents' Scheduling Department, who informed Claimant that the Scheduling
   Department was unaware of Duggan's scheduling change for Claimant.
4  From approximately October 2, 2018 to October 12, 2018, Respondents scheduled
   Claimant to work, and Claimant worked, lead shifts at Respondent's Village House
5  restaurant.
6  In or about October 2018, Respondents' Labor Relations Area Manager Valarie
   Howard and Respondents' Area Manager Thomas Truong authorized Claimant to
7  change any of her scheduled host shifts to lead shifts using Respondents' workforce
   management software, WorkBrain, so that Claimant would no longer be paid a lower
8  hourly rate during host shifts.
9  On or about November 14, 2018, Claimant submitted a Cross Training Interest Form
   on Respondents' online employee portal requesting training for Claimant to work
10 lead shifts at Respondents' Market House restaurant. That same day, Respondents
   emailed Claimant a denial of her request and instructed Claimant to speak with her
11 Area Leaders to apply for Lead Training.
12 On or about November 15, 2018, Claimant emailed Respondents' Labor Relations
   Area Manager Valerie Howard and Respondents' Manager Steve Coughlin informing
13 them that Respondents' had denied Claimant's request to receive lead shift training
   at Respondents' Market House restaurant and Respondents denied her request to
14 work at Respondents' Pizza Port restaurant because of Claimant's disabilities.
   Claimant also informed Howard that she was not being scheduled for lead receiver
15 shifts at the higher pay rate, and thus had to change her pay rate using WorkBrain
   on most shifts.
16 In or about February 2019, Respondents' Production Manager Jeff Duggan became
17 Claimant's supervisor at Respondents' Fan Toon restaurants where Claimant was
   working. Shortly after becoming Claimant's supervisor, Duggan told Claimant that
18 she would no longer be scheduled to work full time in Respondents' Fan Toon
   restaurants because the restaurants did not have enough workload. Claimant is
19 informed and believes that Duggan was attempting to get Claimant moved out of his
   management area.
20 On or about March 27, 2019, Respondents' Production Manager Jeff Duggan
21 demanded Claimant tell him what manager had authorized her to receive lead
   shift pay rate during host shifts. Claimant responded to Duggan showing him emails
22 from Respondents' Labor Relations Area Manager Valarie Howard and Area
   Manager Thomas Truong authorizing Claimant to adjust her pay rate whenever she
23 worked host shifts. After discussing this with Claimant, Duggan told Claimant she
   was no longer allowed to use Respondents' workforce management software
24 Workbrain on any shifts, including Claimant's lead shifts that required her to use
25 Workbrain as part of her duties as a Lead Receiver. Duggan also told Claimant the
   she would no longer be paid the lead shift rate when working host shifts.

26

27
                                    -5-
                        *Complaint – DFEH No. 202005-10162814*

28
   Date Filed: May 14, 2020
   Date Amended: May 20, 2020

On or about May 5, 2019, Claimant called Respondents' Lead Receiver Mark Fukushima asking if there was any shellfish being stored in Respondents' Pizza Port restaurant's freezer because Claimant had upcoming shifts scheduled at Pizza Port. Fukushima confirmed that shrimp was being stored in the Pizza Port freezer and chefs at Pizza Port were working on a shrimp salad and pasta menu item. Fukushima followed the phone call with an email and an attached picture of a box labeled "shrimp" in the Pizza Port freezer. That same day, Claimant emailed Respondents' management asking to be removed from her upcoming shifts at Pizza Port, and to move to a different location due to shellfish being stored at Pizza Port and Claimant's shellfish allergy disability. Claimant is informed and believes that Respondents intentionally store an unused box labeled "shrimp" in the freezer at Pizza Port to prevent Claimant from being able to work shifts at Pizza Port.

In or about May 2019, Respondents' Production Manager Duggan instructed Claimant to provide him with an updated doctor's note stating whether Claimant could be exposed to cooked shrimp or uncooked shrimp.

On or about May 11, 2019, Claimant provided a doctor's note clarifying that Claimant cannot be exposed to the cooking of shellfish, she may safely work near a freezer where shellfish is kept, but she should not open or reclose frozen containers containing shellfish. Claimant provided this doctor's note to Respondents and is informed and believes that her doctor's office also faxed this doctor's note to Respondents.

On or about May 21, 2019, Claimant had a phone call with Respondents' Workforce Ability Manager, Nancy Jones where Jones told Claimant that Respondents are considering terminating Claimant because Respondent could no longer accommodate Claimant's shellfish allergy disability. During this phone call Jones also said words to the effect of "You don't fit the profile," "Your allergy is not our problem," and "We can do whatever we want," referring to Claimant's disability and possible termination.

On or about June 6, 2019, Respondents held a meeting with Claimant where Claimant had to choose between two options: 1) Claimant could work a reduced work schedule of thirty-two (32) hours per week with the condition that Claimant would be terminated "if anything were to happen," or 2) Claimant would be demoted to the Assistant Receiver position and continue working her regular full time hours. In fear of being terminated, Claimant chose to be demoted to the Assistant Receiver position.

On or about June 10, 2019, Respondent's Manager of Compensation Taryn Alba emailed Claimant stating that Claimant's hourly pay rate would be reduced with her demotion to Assistant Receiver. Claimant is informed and believes that Respondents have demoted other employee's classification to Assistant Receiver without reducing the employee's pay.

On or about July 14, 2019, Respondents began scheduling Claimant as an Assistant Receiver at a decreased pay rate. However, Respondents continued to intermittently assign Claimant to work shifts as a Receiver, at the Assistant Receiver pay rate,

-6-



1  because of Claimant's previous "job knowledge" of the higher-level position, despite
   Claimant's demotion to Assistant Receiver.  P
2  On or about September 20, 2019, Claimant submitted a request on Respondents'
   online employee portal to be reclassified to the Receiver position.
3
   On or about October 29, 2019, Respondents denied Claimant's job reclassification
4  request.  Claimant continues to be employed with Respondents as an Assistant
   Receiver at the decreased pay rate.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          -7-
                              *Complaint – DFEH No. 202005-10162814*

28
   Date Filed: May 14, 2020
   Date Amended: May 20, 2020

VERIFICATION

I, **Morgan J. Good**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On May 20, 2020, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Lompoc, California**

-8-
*Complaint – DFEH No. 202005-10162814*

Date Filed: May 14, 2020
Date Amended: May 20, 2020



# Notice of Service of Process

**CHS / ALL**
**Transmittal Number: 21800397**
**Date Processed: 07/24/2020**

| | |
|---|---|
| **Primary Contact:** | Sylvia Haro<br>The Walt Disney Company<br>500 S Buena Vista St<br>Burbank, CA 91521-0105 |
| **Electronic copy provided to:** | Joseph Eustice<br>Chakira Gavazzi<br>Paul Chang<br>Lisa Artale<br>Stephanie Parker |

| | |
|---|---|
| **Entity:** | Walt Disney Parks and Resorts U.S., Inc.<br>Entity ID Number  3505380 |
| **Entity Served:** | Walt Disney Parks and Resorts U.S., Inc. |
| **Title of Action:** | Donna May vs. Walt Disney Parks and Resorts U.S., Inc |
| **Matter Name/ID:** | Donna May vs. Walt Disney Parks and Resorts U.S., Inc (10393873) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Orange County Superior Court, CA |
| **Case/Reference No:** | 30-2020-01146794-CU-OE-CJC |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 07/24/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | David P. Myers<br>909-919-2027 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com